UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| JUSTIN TATUM,<br><br>Plaintiff,<br><br>v.<br><br>CARGUARD ADMINISTRATION INC,<br>a Arizona Corporation<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |



## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. Plaintiff JUSTIN TATUM ("Plaintiff") is a natural person and is a citizen of the Eastern District of Texas and was present in Tyler County, Texas during all calls at issue in this case.

2. Defendant CARGUARD ADMINISTRATION INC ("Carguard" "Defendant") is a corporation organized and existing under the laws of Arizona with its principal address at 1776 N Scottsdale Road, Suite 2827, Scottsdale, Arizona 85252 and is a Texas foreign corporation and can be served via registered agent Incorp Services, Inc. at 815 Brazos Street, Suite 500, Austin, Texas 78701.

### NATURE OF ACTION

1

3. Plaintiff brings this Complaint and Demand for Jury Trial against the Defendant to stop placing illegal robocalls to Plaintiff's personal cell phone and to obtain redress as authorized by statute.

4. Defendant offers vehicle service contracts ("VSC's") to consumers. As part of marketing their services, Defendant and their agents placed illegal robocalls with a prerecorded voice message to Plaintiff's cell phone.

5. Defendant makes illegal robocalls with a prerecorded voice message to consumers using false and misleading statements saying they are part of the consumers vehicle's dealer warranty in order to sell their VSC's

6. Defendant did not obtain express written consent from Plaintiff prior to calling his cell phone, and Defendant is therefore liable under the Telephone Consumer Protection Act 47 U.S.C. § 227 (the "TCPA") and its implementing regulation, 47 C.F.R. § 64.1200(a)(2).

7. Congress enacted the TCPA in 1991 to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

8. The TCPA targets illegal robocalls calls exactly like the ones alleged in this case, based on Defendant's use of technological equipment to spam consumers on a grand scale without their consent.

9. By placing the calls at issue, Defendant has violated the statutory rights and privacy of Plaintiff and caused him to suffer damages that are recognized by statute.

2

10. Plaintiff therefore seeks an injunction requiring Defendants to stop calling his personal cell phone, as well as an award of actual and statutory damages, civil penalties, costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

11. This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this case arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

12. This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendant's telemarketing robocalls to Plaintiff; adds little complexity to the case; and doesn't seek money damages, so it is unlikely to predominate over the TCPA claims.

13. This Court has personal jurisdiction over Defendant because they conduct business in this District and in the State of Texas and because the events giving rise to this lawsuit occurred in this District.

14. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant regularly conducts business in the state of Texas and in this District, and because the wrongful conduct giving rise to this case occurred in this District.

## FACTUAL ALLEGATIONS

15. Plaintiff's personal cell phone (XXX) XXX-0070 has been registered on the National Do Not Call Registry since December 2007.

16. Defendant Carguard is the administrator for VSC's.

17. As part of their marketing, Defendant Carguard hired a company by the name of Vehicle Protection Specialists, LLC d/b/a Auto Services ("Auto Services") to sell VSC's on behalf of Defendant Carguard.

18. According to the Orange County clerk recorder's website https://cr.ocgov.com/FBNOnlineNet/ the fictitious business name "Auto Services" is owned and controlled by Vehicle Protection Specialists LLC. *See Exhibit A.*

19. Auto Services website that they own, and control is https://vehicleprotectionspecialist.com. *See Exhibit B.*

20. According to the California Secretary of State website business search https://bizfileonline.sos.ca.gov/search/business Auto Services is a business that has been terminated since November 30, 2021. *See Exhibit C.*

21. Plaintiff received at least five (5) illegal robocalls within a thirty-day period from telemarketers calling on behalf of Defendant Carguard soliciting VSC's ("the calls").

22. All of the calls started with the same prerecorded voice message regarding Plaintiff's "vehicle extended warranty" advising Plaintiff his warranty was about to expire.

23. The prerecorded voice message does not identify Defendant Carguard.

24. On August 18, 2022, Plaintiff received one of multiple robocalls from a telemarketer calling on behalf of Defendant Carguard.

25. Plaintiff answered and heard a prerecorded voice message regarding Plaintiff's "vehicle extended warranty."

26. Plaintiff was angry and frustrated for continuing to receive the same robocall with the same prerecorded voice message and followed the prompts in order to identify the company responsible for the calls.

27. Plaintiff was then connected to a male telemarketer with an Indian accent that advised Plaintiff this call was regarding Plaintiff's vehicles extended warranty.

28. The male telemarketer then solicited Plaintiff for a VSC on behalf of Defendant Carguard.

29. Plaintiff did not want or need a VSC however advised the male telemarketer he did for the sole purpose of identifying the company responsible for the calls.

30. The male telemarketer then transferred Plaintiff to a representative from "Auto Services" named Baron Finneran.

31. Baron collected Plaintiff's vehicle and personal information and solicited Plaintiff for a VSC on behalf of Defendant Carguard.

32. Baron advised the down payment would be $100 and $148.25/mnth.

33. Plaintiff received the VSC in the mail that lists Auto Services as the seller and Defendant Carguard as the administrator. *See Exhibit D.*

34. Despite Auto Services being a terminated entity, Auto Services is still operating as a business.

35. Defendant Cargurad is the administrator of the VSC's and has complete control over the sellers they hire to solicit their VSC's. Defendant Carguard knowing and willfully authorizes Auto Services to place illegal robocalls to millions of consumers en mass because it benefits Defendant Carguard financially when consumers purchase their VSC's.

36. Defendant Carguard and Auto Services have been sued on multiple occasions in same lawsuits for violating the TCPA and continue their illegal behavior because violating the TCPA benefits Defendant Carguard and Auto Services financially.

37. Defendants train their agents and telemarketers not to provide their real name until a consumer purchase one of their VSC's in order to hide their true identity and duck liability for violating the TCPA.

38. With information and belief, Plaintiff has received more illegal robocalls from or on behalf of Defendant Carguard within the last two years that are unknown to Plaintiff at this time but will be revealed during discovery.

39. Table A below displays the calls made to Plaintiff's cell phone 0070 on behalf of Defendant Carguard.

Table A:

| **Number** | **Date** | **Time** | **Caller ID** | **Notes** |
|---|---|---|---|---|
| 1. | 07/28/2020 | 4:01 PM | 312-468-8089 | Prerecorded voice message about vehicle extended warranty. |
| 2. | 07/29/2020 | 8:23 AM | 312-638-4844 | Prerecorded voice message about vehicle extended warranty. |
| 3. | 08/10/2020 | 3:48 PM | 682-284-2730 | Prerecorded voice message about vehicle extended warranty. |
| 4. | 08/12/2020 | 9:33 AM | 469-223-4040 | Prerecorded voice message about vehicle extended warranty. |
| 5. | 08/18/2020 | 5:51 PM | 972-382-5395 | Prerecorded voice message about vehicle extended warranty. Transferred to |

|  |  |  |  | telemarketer then rep Baron. Purchased VSC. |
|--|--|--|--|--|

40. Defendants employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

41. Neither Defendant Carguard or Auto Services are registered pursuant to § 302.101 of the Texas Business & Commerce Code to provide telephone solicitations. The https://direct.sos.state.tx.us/telephonesearch.asp site ("Texas Registration Database") does not contain Defendant Carguard or Auto Services registrations.

42. Neither Defendant Carguard or Auto Services qualify for an exemption under § 302.053.

43. No emergency necessitated none of the calls.

44. Defendant Carguard never sent Mr. Tatum any do-not-call policy. Plaintiff sent an internal do-not-call policy request to cs@carguard.com on October 14, 2022 which is an email listed on their website they own and control https://www.carguardadmin.com.

45. Auto Services never sent Mr. Tatum any do-not-call policy. Plaintiff sent an internal do-not-call policy request to info@vehicleprotectionspecialist.com on October 14, 2022 which is an email listed on their privacy policy in their website they own and control https://vehicleprotectionspecialist.com

46. On information and belief, the Defendant Carguard or Auto Servcies did not have a written do-not-call policy while they were sending Mr. Salaiz the calls.

47. On information and belief, the Defendant Carguard or Auto Servcies did not train their agents who engaged in telemarketing on the existence and use of any do-not-call list.

48. It is evidently Defendant Carguard's business practice to continue to authorize sales calls to consumers who have already made DNC requests and who have stated they are not

interested in Defendant Carguard's services. Such conduct violates the TCPA and its implementing regulations, 47 CFR § 64.1200(d)(3)(requiring telemarketers to honor and record DNC requests when made).

49. Defendant Carguard participated in, facilitated, directed, authorized, knew of or willfully ignored the false and misleading sales practices and unlawful robocalling, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, sellers, and co-conspirators to engage in the false and misleading sales practices and unlawful robocalling.

50. Defendant Carguard has knowledge of and have adopted and maintained TCPA violations as a sales strategy. This is amply supported by the complaints Defendant Carguard receive that are available from the Better Business Bureau ("BBB"). The full scale of the complaints Defendant Carguard receive is not currently available to Plaintiff but will be revealed through discovery to amplify what is alleged in this complaint.

51. Plaintiff never gave his prior express written consent to receive the calls alleged herein. Plaintiff has never had a relationship with Defendant Carguard or Auto Services prior to the calls alleged herein.

## VICARIOUS LIABILITY OF DEFENDANT CARGUARD

52. Defendant Carguard is liable for the phone calls initiated by the anonymous telemarketers under the theories of actual authority, apparent authority, and ratification, and as well as liable because any other result would impair the underlying purpose of the TCPA.

53. Defendant Carguard has hired sellers that use anonymous telemarketers to solicit VSC's on behalf of Defendant Carguard and given the telemarketers the authority to decide

which prospective consumers to transfer to Defendant Carguards sellers based on the qualification criteria Defendant Carguard provided to the telemarketers.

54. Defendant Carguard is the liable party as the direct beneficiary of the illegal telemarketing calls as it stood to gain Plaintiff as a customer and sold Plaintiff a VSC.

55. Defendant Carguard maintained control over their telemarketers by instructing them on what type of consumers to call and which consumers to refer to Defendant Carguard based on Defendant Carguard's stated minimum qualifications.

56. Defendant Carguard ratified the behavior of the telemarketers by accepting referrals from the telemarketers.

57. Furthermore, Defendant Carguard had day-to-day control over the actions of its telemarketers, including the ability to prohibit them from using prerecorded voice messages to contact potential customers of Defendant Carguard and the ability to require them to respect the National Do Not Call Registry.

58. Defendant Carguard also gave interim instructions to its telemarketers by providing lead-qualifying instructions and lead volume limits.

59. Defendant Carguard donned its telemarketer with apparent authority to make the calls at issue. Thus, the telemarketers pitched "VSC's" in the abstract.

60. Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c.

61. "[A]pparent authority can arise in multiple ways and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly

to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

62. A principal may make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

63. Defendant Carguard's telemarketers transferred customer information, including Plaintiff's contact information, directly to Defendant Carguard. Thus, the telemarketer had the "ability . . . to enter consumer information into the seller's sales or customer systems," which the FCC has explained to show apparent agency. *Dish*, 28 FCC Rcd. at 6592 ¶ 46.

64. Finally, the FCC has held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

65. Defendant Carguard is the liable party as the direct beneficiary of the illegal telemarketing robocalls as they stood to gain Plaintiff as a customer when telemarketers solicited Plaintiff for VSC's on their behalf.

**The Texas Business and Commerce Code 305.053**

66. The Texas Business and Commerce code has an analogous portion that is related to the

TCPA and was violated in this case.

67. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

### Violations of the Texas Business and Commerce Code § 302.101

68. The actions of the Defendant violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having registration certificate and bond on file with the Texas Secretary of State.

69. Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

70. The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

71. Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

72. Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES

## AS A RESULT OF THE CALLS

73. Plaintiff has been denied the use of his phone, enjoyment of his phone, and had the functionality of his phone decreased because of unnecessary charging, erosion of phone memory, and had his privacy invaded by the harassing robocalls.

74. Defendant Carguard's calls harmed the Plaintiff by causing the very harm that Congress sought to prevent a "nuisance and invasion of privacy."

75. Plaintiff has been annoyed, harassed, and irritated by robocalls placed by the Defendant and other similar companies.

76. Defendant Carguard's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone by placing telemarketing robocalls to the Plaintiff.

### Plaintiff's cell phones are residential numbers

77. The calls were to the Plaintiff's cellular phone 0070 which is Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, watching movies, listening to music and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name and pays the cell phones from his personal accounts.

## FIRST CAUSE OF ACTION

### Willful and/or Knowing Violation of 47 U.S.C. § 227
### Telephone Consumer Protection Act of 1991

78. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

79. Defendant and/or their agents placed calls to Plaintiff's cellular telephone.

80. Plaintiff never consented to receive calls from or on behalf of Defendant. Plaintiff has no relationship with Defendant.

81. Defendant's calls were made for purposes of advertising and marketing Defendant Carguard's VSCs. These calls constituted commercial advertising and telemarketing as contemplated by the TCPA.

82. Defendants and/or their telemarketers/representatives or agents violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), at least five (5) times by placing non-emergency telemarketing robocalls to Plaintiff's cellular telephone number using a prerecorded voice message without prior express written consent.

83. As a result of their unlawful conduct, Defendant repeatedly invaded the personal privacy of Plaintiffs, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling Plaintiff to recover $500 in statutory damages for each violation and an injunction requiring Defendant to stop their unlawful calling campaigns.

84. Not only did Defendant make these violating calls, Defendant and/or their agents did so "knowingly" and/or "willfully' under 47 U.S.C. § 227 (b)(3)(C).

85. If the Court finds that Defendant willfully or knowingly violated this subsection, the Court may exercise its discretion to increase the amount of the award from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

## SECOND CAUSE OF ACTION

**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 C.F.R. § 64.1200(C))**

94. Mr. Tatum realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

95. Defendant called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

96. Plaintiff was statutorily damaged at least five (5) times under 47 U.S.C. § 227(c)(3)(F) by the Defendant by the telephone calls described above, in the amount of $500 per call.

97. Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## THIRD CAUSE OF ACTION
**Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)**

98. Plaintiff incorporates the forgoing allegations as if fully set forth herein.

99. The foregoing acts and omissions of Defendant and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

    a. written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1) [1];

---

[1] *See id.* at 425 (codifying a June 26, 2003 FCC order).

    b. training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2)[2]; and,

    c. in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[3]

100. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

101. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

## FOURTH CAUSE OF ACTION
### Violations of The Texas Business and Commerce Code 305.053

102. Plaintiff incorporates the foregoing allegations as if set forth herein.

103. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Mr. Tatum cellular telephone numbers without his prior express written consent in violation of 47 USC 227 et seq. The Defendant violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using a prerecorded voice message that does not comply with the technical and procedural standards under this subsection.

104. Plaintiff is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order

105. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053**(c)

## FIFTH CAUSE OF ACTION

### (Violations of The Texas Business and Commerce Code 302.101)

106. Plaintiff incorporates the foregoing allegations as if set forth herein. by reference each and every allegation set forth in the preceding paragraphs.

107. The foregoing acts and omissions of Defendant and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

108. Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 302.302**.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Justin Tatum prays for judgment against the defendant jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendant violate the TCPA and Texas state law;

C. An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation for 5 calls.

16

E. An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F. An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

G. An award to Mr. Tatum of damages, as allowed by law under the TCPA;

H. An award to Mr. Tatum of interest, costs and attorneys' fees, as allowed by law and equity

I. Such further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

October 21, 2022,            Respectfully Submitted,

Justin Tatum
Plaintiff, Pro Se
471 Utah Avenue
Tyler, Texas 75704
469-901-0700
Tatumj2000@gmail.com